# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
|  | : |  |
| IN RE MICHAEL BAKER CORP. | : | CIVIL ACTION NO. |
| SECURITIES LITIGATION | : | 2:08-cv-00370-JFC |
|  | : |  |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PROPOSED PLAN OF ALLOCATION

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Michael K. Yarnoff
Benjamin J. Sweet
Bharati O. Sharma
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056

**BARRACK, RODOS & BACINE**
Daniel E. Bacine
Mark R. Rosen
Lisa M. Lamb
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Tel:  (215) 963-0600
Fax:  (215) 963-0838

*Attorneys for Lead Plaintiffs, City of Tallahassee Retirement System and Southeastern Pennsylvania Transportation Authority, and Co-Lead Counsel for the Proposed Settlement Class*

**Table of Contents**

Page

I.    INTRODUCTION ...............................................................................................1

II.   DESCRIPTION OF THE LITIGATION.............................................................1

III.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR
      SETTLEMENT PURPOSES...............................................................................3

      A.   The Standards of Rule 23(a) are Satisfied ............................................... 4

           1.   The Members of the Settlement Class are so Numerous that Joinder of all
                Members Is Impracticable.......................................................................... 4

           2.   There are Numerous Questions of Law or Fact ....................................... 5

           3.   Lead Plaintiffs' Claims Are Typical of the Claims of the Settlement
                Class............................................................................................................ 6

           4.   Lead Plaintiffs Have Fairly and Adequately Protected the Interests of the
                Settlement Class......................................................................................... 7

      B.   The Requirements of Rule 23(b)(3) Have Been Met................................. 9

           1.   The Predominance Requirement Has Been Met.................................. 9

           2.   The Superiority Requirement Has Been Met....................................... 10

IV.   THE NOTICE OF SETTLEMENT SATISFIES DUE PROCESS
      REQUIREMENTS AND IS REASONABLE....................................................11

V.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE...........12

      A.   The Standards for Judicial Approval of a Class Action Settlement........................... 12

      B.   An Analysis of the *Girsh* Factors Confirms That the Settlement Is Fair,
           Reasonable, and Adequate ....................................................................... 14

           1.   The Complexity, Expense, and Duration of the Litigation................................. 14

           2.   The Reaction of the Settlement Class to the Settlement ..................................... 16

           3.   The Stage of the Proceedings and Amount of Discovery Completed ................ 16

4.  The Risks of Establishing Liability and Damages and in Maintaining the Class Action Through Trial ............................................................................... 18

5.  Defendants' Ability to Withstand a Greater Judgment, and the Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation ................................................................. 20

VI.  THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE .................23

VII.  CONCLUSION...................................................................................................................25

## <u>Table of Authorities</u>

<u>Page(s)</u>

CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................... 9, 10, 18

*Anixter v. Home-Stake Prod. Co.,*
    77 F.3d 1215 (10th Cir. 1996) ................................................................... 22

*Backman v. Polaroid Corp.,*
    910 F.2d 10 (1st Cir. 1990)........................................................................ 20

*Bell Atl. Corp. v. Bolger,*
    2 F.3d 1304 (3d Cir. 1993)........................................................................ 16

*Berkey Photo, Inc. v. Eastman Kodak Co.*
    603 F.2d 263 (2d Cir. 1979)...................................................................... 22

*Bogosian v. Gulf Oil Corp.,*
    561 F.2d 434 (3d Cir.1977)........................................................................ 8

*Bradburn Parent Teacher Store, Inc. v. 3M,* .................................................................
    513 F. Supp. 2d 322 (E.D. Pa. 2007 ........................................................ 11

*Bryan v. Pittsburgh Plate Glass Co.,*
    494 F.2d 799 (3d Cir. 1974)...................................................................... 13

*Cohen v. Tuttle,*
    No. 85-2396, 1987 WL 7224 (E.D. Pa. Feb. 24, 1987) ............................ 13

*Eichenholtz v. Brennan,*
    52 F.3d 478 (3d Cir. 1995)...................................................................... 13, 14

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974).................................................................................. 11

*Eisenberg v. Gagnon,*
    766 F.2d 770 (3d Cir. 1985)........................................................................ 9

*Fickinger v. C.I. Planning Corp.,*
    646 F. Supp. 622 (E.D. Pa. 1986 ............................................................. 21

*Girsh v. Jepson,*
    521 F.2d 153 (3d Cir. 1975)...................................................................... 14

*Godshall v. The Franklin Mint Co.*,
No. 01-6539, 2004 WL 2745890 (E.D. Pa. Dec. 1, 2004)............................................ 6

*Greebel v. FTP Software, Inc.*,
939 F. Supp. 57 (D. Mass. 1996) ......................................................... 13

*In re Aetna Inc. Sec. Litig.*,
MDL No. 1219, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ........................................ 22

*In re Am. Bus. Fin. Servs. Inc. Noteholders Ltig.*,
No. 05-232, 2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ........................................ 11

*In re AT&T Corp. Sec. Litig.*,
455 F.3d 160 (3d Cir. 2006)........................................................... 14

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)................................................... 13, 14, 23

*In re Chambers Dev. Sec. Litig.*,
912 F. Supp. 822 (W.D. Pa. 1995) ..................................................... 16

*In re Computron Software*,
6 F. Supp. 2d 313 (D.N.J. 1998) ...................................................... 19

*In re Comty. Bank of N. Va.  and Guar. Bank Second Mortg. Litig.*,
No. 02-1201, 2007 WL 2008494 (W.D. Pa. July 5, 2007) ........................................ 22

*In re Corel Corp. Inc. Sec. Litig.*,
206 F.R.D. 533 (E.D. Pa. 2002)................................................... 9, 10

*In re Crazy Eddie Sec. Litig.*,
824 F. Supp. 320 (E.D.N.Y. 1993) .................................................... 22

*In re Datatec Sys., Inc. Sec. Litig.*,
No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)........................... 14

*In re DVI Inc. Sec. Litig.*,
249 F.R.D. 196 (E.D. Pa. 2008).................................................... 9, 10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768, 813 (3d Cir.1995)................................................... 17, 21

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) .................................................... 22

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.,*
  No. 06-3202, 2009 WL 2137224 (E.D. Pa. July 16, 2009) .................................. *passim*

*In re Loewen Group Inc. Sec. Litig.,*
  233 F.R.D. 154 (E.D. Pa. 2005) ............................................................................ 8

*In re Michael Milken & Assocs. Sec. Litig.,*
  150 F.R.D. 57 (S.D.N.Y. 1993) ........................................................................... 22

*In re NASDAQ Market-Makers Antitrust Litig.,*
  187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................... 20

*In re NASDAQ Market-Makers Antitrust Litig.,*
  No. 94 Civ. 3996 RWS, 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000) ........................... 23

*In re PaineWebber Ltd. P'ships Litig.,*
  171 F.R.D. 104, 126, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).......... 23

*In re PNC Fin. Servs. Group, Inc.,*
  440 F. Supp. 2d 421 (W.D. Pa. 2006) ................................................................... 13

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,*
  148 F.3d 283 (3d Cir. 1998) ........................................................................ *passim*

*In re Rent-Way Sec. Litig.,*
  218 F.R.D. 101 (W.D. Pa. 2003) .................................................................. *passim*

*In re Rent-Way Sec. Litig.,*
  305 F. Supp.2d 491 (W.D. Pa. 2003) ................................................................... 17

*In re SmithKline Beckman Corp. Sec. Litig.,*
  751 F. Supp. 525 (E.D. Pa. 1990) ....................................................................... 16

*In re Sumitomo Copper Litig.,*
  189 F.R.D. 274 (S.D.N.Y. 1999) ......................................................................... 14

*In re Telik, Inc. Sec. Litig.,*
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................... 24

*In re Warfarin Sodium Antitrust Litig.,*
  391 F.3d 516 (3d Cir. 2004)............................................................................. 7, 21

*In re Warner Commc'ns Sec. Litig.,*
  618 F. Supp. 735 (S.D.N.Y. 1985)........................................................................ 19

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................... 9

*Johnston v. HBO Film Mgmt., Inc.*,
    265 F.3d 178 (3d Cir. 2001)............................................................... 7, 8, 9

*Lachance v. Harrington*,
    965 F. Supp. 630 (E.D. Pa. 1997) ........................................................... 11

*Levinson v. Prentice-Hall, Inc.*,
    868 F.2d 558 (3d Cir. 1989).................................................................... 19

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972)............................................................... 21, 22

*Regents of the Univ. of Cal. v. Credit Suisse First Boston USA, Inc.*,
    482 F.3d 372 (5th Cir. 2007) .................................................................. 20

*Robbins v. Kroger Props.*,
    116 F.3d 1441 (11th Cir. 1997) .............................................................. 20

*Semerenko v. Cendant Corp.*,
    223 F.3d 165 (3d Cir. 2000)................................................................... 19

*Serventi v. Bucks Tech. High Sch.*,
    225 F.R.D. 159 (E.D. Pa. 2004)................................................................ 7

*Sowell v. Butcher & Singer, Inc.*,
    926 F.2d 289 (3d Cir. 1991)................................................................... 19

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)..................................................................... 5

*Stoetzner v. U.S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)................................................................... 16

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*,
    No. 03-4578, 2005 WL 1213926 (E.D. Pa. May 19, 2005).......................... 22

*Teachers' Ret. Sys. of La. v. ACLN Ltd.*,
    No. 01 Civ. 11814 (LAP), 2004 WL 2997957 (S.D.N.Y. Dec. 27, 2004) ................... 5

*Trans World Airlines, Inc. v. Hughes*,
    312 F. Supp. 478 (S.D.N.Y. 1970)........................................................... 23

*Women in City Gov't United v. The City of New York*,
No. 75 Civ. 2868 (MJL), 1989 WL 153059 (S.D.N.Y. Dec. 13, 1989) ...................... 24


**UNPUBLISHED ORDERS**

*In re PainCare Holdings, Inc. Sec. Litig.*,
6:06-cv-362-Orl-28-DAB, Final Judgment Order, Sept. 15, 2009 .............................. 24


**RULES AND STATUTES**

Federal Rule of Civil Procedure 23 .......................................................................... *passim*

15 U.S.C. § 78u-4(a)(7) .................................................................................................. 12


**OTHER AUTHORITIES**

Laura E. Simmons & Ellen M. Ryan, Securities Class Action Settlements: 2008 Review
and Analysis, Cornerstone Research, *http://securities.cornerstone.com*...................... 22

## I.     INTRODUCTION

Lead Plaintiffs, City of Tallahassee Retirement System ("City of Tallahassee") and Southeastern Pennsylvania Transportation Authority ("SEPTA"), respectfully submit this memorandum of law in support of their motion for entry of an Order: (a) finally certifying the Settlement Class for settlement purposes; (b) granting final approval of the settlement between Lead Plaintiffs and Michael Baker Corporation ("MBC" or the "Company"), Richard L. Shaw, William P. Mooney, and Craig O. Stuver (collectively, "Individual Defendants," and, together with MBC, "Defendants"); and (c) approving Lead Plaintiffs' proposed Plan of Allocation.

As explained more fully below, through their substantial efforts, Lead Plaintiffs and Co-Lead Counsel have succeeded in obtaining a recovery for the Settlement Class in the total amount of $4,500,000 in cash, on terms provided in the Stipulation and Agreement of Settlement filed with the Court on April 1, 2009 ("Stipulation").[1]  ¶2.[2]  Lead Plaintiffs respectfully submit that this is a very favorable recovery for the benefit of the Settlement Class, particularly in light of the substantial risks associated with continued litigation of this Action, including establishing Defendants' scienter.

## II.     DESCRIPTION OF THE LITIGATION

Beginning on March 13, 2008, various securities class actions were filed on behalf of investors alleging that MBC and the Individual Defendants violated Sections 10(b) and 20(a) of

---

[1]  Unless otherwise defined herein, capitalized terms shall have the meaning ascribed to them in the Stipulation.

[2]  All references to "¶__" herein are to the Joint Declaration of Mark R. Rosen and Michael K. Yarnoff In Support of Lead Plaintiffs' Motions for Final Approval of Settlement, Proposed Plan of Allocation, and Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Declaration") that Lead Plaintiffs are filing concurrently herewith.  The Declaration provides a detailed description of the history of this litigation, the claims asserted, the investigation and discovery undertaken, the negotiation and substance of the Settlement, and the substantial risks in litigating the claims asserted against the Defendants.  It is an integral part of this submission

1

the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder by fraudulently misstating the Company's financial statements.  ¶14.  The complaints alleged that Defendants improperly recognized revenue on domestic managed services projects undertaken by the Company's Energy business segment, which had the effect of artificially inflating the Company's stock price.  ¶14.  By Orders dated June 3, 2008 and July 29, 2008, the Court consolidated the actions, appointed the City of Tallahassee and SEPTA as Lead Plaintiffs, approved Lead Plaintiffs' selection of counsel, Barrack, Rodos & Bacine and Schiffrin Barroway Topaz & Kessler, LLP,[3] as Lead Counsel ("Co-Lead Counsel") and Grinberg Stein & McKee P.C. as Liaison Counsel, and directed Lead Plaintiffs to file a consolidated complaint.  ¶15.

On June 30, 2008, MBC issued a restatement of its consolidated financial statements for the year ended December 31, 2006 and the first three quarters of 2007.  ¶16.  On October 14, 2008, after conducting an extensive investigation, detailed more fully below, Lead Plaintiffs filed the Consolidated Class Action Complaint ("Complaint"), which asserted claims against each of the Defendants under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  On December 15, 2008, Defendants moved to dismiss the Complaint.  ¶17.  While Defendants' motion to dismiss was pending, the parties agreed to enter into mediation and requested that the Court defer further briefing on Defendants' motion in light of then pending mediation.  ¶18.

On February 10, 2009, Lead Plaintiffs and MBC, acting on behalf of all Defendants, participated in a mediation before The Honorable Nicholas H. Politan, a retired federal judge with significant experience in mediating securities class actions.  ¶21.  In advance of that mediation, the parties exchanged mediation statements, which set forth their respective positions

---

and is incorporated by reference herein.

[3] On November 17, 2008, Schiffrin Barroway Topaz & Kessler, LLP changed its name to Barroway Topaz Kessler Meltzer & Check, LLP.

regarding, among other things, the merits of the Action, including the claims, defenses and damages sought. ¶21. As a result of the full-day mediation, during which the parties presented their respective views on these topics, Lead Plaintiffs and MBC reached an agreement-in-principle to settle the Action. ¶21. Thereafter, the parties negotiated the terms of the Settlement and eventually entered into the written Stipulation on April 1, 2009. ¶22. The Court preliminarily approved the Settlement by Order dated May 14, 2009 ("Preliminary Approval Order"). Pursuant to the Stipulation, the cash payment of $4.5 million was deposited into escrow by MBC on June 3, 2009 and has since been earning interest for the benefit of the Settlement Class. ¶22.

From the inception of the litigation, Co-Lead Counsel diligently prosecuted this case, including (i) reviewing and analyzing MBC's public disclosures (to the Securities and Exchange Commission ("SEC") and otherwise) and financial statements, (ii) interviewing numerous witnesses with pertinent knowledge of the facts, including former MBC employees, (iii) drafting and filing the detailed Complaint, (iv) consulting with experts in accounting and damages, (v) researching the applicable law with respect to the claims asserted and Defendants' potential defenses thereto, and (vi) preparing Lead Plaintiffs' mediation statement, reviewing the mediation statement submitted by Defendants, and attending the all-day mediation. ¶4.

## III.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES

Lead Plaintiffs request the Court's final certification of the Settlement Class consisting of all persons and entities who purchased or otherwise acquired the common stock of MBC between March 19, 2007 and February 22, 2008, inclusive ("Settlement Class Period"), and who were, based on conduct that was or could have been asserted in the Action, allegedly injured

thereby.[4]

The Settlement was reached prior to Lead Plaintiffs filing their motion for class certification. Therefore, although the Court, through its Preliminary Approval Order dated May 14, 2009, properly provisionally certified the Settlement Class based upon the Stipulation and the oral submissions made by the parties at the preliminary approval hearing and certified Lead Plaintiffs as the Class Representatives, the Court must still issue a final determination concerning whether the Settlement Class satisfies the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure ("Rules").

### A.     The Standards of Rule 23(a) are Satisfied

The general criteria for certification of a class are set forth in Rule 23(a), as follows:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1)     the class is so numerous that joinder of all members is impracticable;
>
> (2)     there are questions of law or fact common to the class;
>
> (3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)     the representative parties will fairly and adequately protect the interests of the class.

Each of these requirements is satisfied here.

### 1.     The Members of the Settlement Class are so Numerous that Joinder of all Members Is Impracticable

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members

---

[4] Excluded from the Settlement Class are MBC and the Individual Defendants, any entity in which any of the foregoing have or had a controlling interest, the legal representatives, heirs, successors, or assigns of any of them, and all officers and directors of MBC. The Settlement Class also excludes those persons who timely request exclusion pursuant to the Notice described herein.

would be "impracticable."  "This requirement does not demand that joinder be impossible, only

extremely difficult or inconvenient."  *In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 112 (W.D. Pa.

2003).  Numerosity is generally satisfied where the class claims involve more than 40 members.

*See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Moreover, other courts have held

that in securities fraud cases "relating to publicly owned and nationally listed corporations, the

numerosity requirement may be satisfied by a showing that a large number of shares were

outstanding and traded during the relevant period."  *Teachers' Ret. Sys. of La. v. ACLN Ltd.*, No.

01 Civ. 11814 (LAP), 2004 WL 2997957, at *3 (S.D.N.Y. Dec. 27, 2004) (internal citations and

quotations omitted).

    This requirement is satisfied here.  At the end of the Settlement Class Period, there were

approximately 8.85 million shares of MBC common stock issued and outstanding.  Lead

Plaintiffs' damages expert estimated the float to be about 7.43 million shares.  Also, as provided

in the Notice, Lead Plaintiffs' damages expert estimates that approximately 3.5 million shares of

MBC common stock may have been affected by the conduct at issue in the Action.  As of August

21, 2009, Heffler, Radetich & Saitta LLP ("HR&S"), the court-appointed Claims Administrator

for the Settlement, had mailed a total of 10,167 Notices and Proof of Claim and Release forms to

potential Settlement Class Members or their nominees.  Affidavit of Edward J. Sincavage, CPA

Regarding Dissemination of Notice to the Class (the "Sincavage Affidavit"), ¶ 11.  Accordingly,

the Settlement Class is extremely large and the numerosity requirement of Rule 23(a)(1) is

satisfied.

### 2.    There are Numerous Questions of Law or Fact Common to the Members of the Settlement Class

    Rule 23(a)(2) requires that, in order for an action to be properly maintained as a class

action, there must be questions of law or fact common to the class.  "Commonality does not

require that there be an identity of claims among class members," but instead imposes a "lenient standard and is satisfied when the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Rent-Way*, 218 F.R.D. at 112; *see also Godshall v. The Franklin Mint Co.,* No. 01-6539, 2004 WL 2745890, at *2 (E.D. Pa. Dec. 1, 2004) ("Generally this requirement is satisfied when the defendant has engaged in the same conduct towards members of the proposed class.").

The "commonality" requirement is easily satisfied here.  The claims of all Settlement Class members arise out of the same nucleus of operative facts and are based upon the following common legal issues:

(a)   whether Defendants violated the federal securities laws;

(b)   whether the SEC filings, press releases, and other public statements contained material misstatements or omitted to state material information;

(c)   whether and to what extent the Company's financial statements failed to comply with Generally Accepted Accounting Principles ("GAAP");

(d)   whether and to what extent the market prices of the Company's securities were artificially inflated due to Defendants' non-disclosures and/or misrepresentations;

(e)   whether the Defendants acted with the requisite state of mind in omitting and/or misrepresenting material facts;

(f)   whether the Individual Defendants are controlling persons of the Company;

(g)   whether reliance may be presumed pursuant to the fraud-on-the-market rule; and

(h)   whether the members of the Settlement Class have sustained damages as a result of Defendants' misconduct and, if so, the proper measure thereof.  *See* Complaint at ¶ 31.

**3.      Lead Plaintiffs' Claims Are Typical of the Claims of the Settlement Class**

Rule 23(a)(3) requires that "the claims ... of the representative parties [be] typical of the claims ... of the class." It is not necessary that all putative class members share identical claims to satisfy this element. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004); *In re Rent-Way*, 218 F.R.D. at 112-13. Instead, "[t]he heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims," irrespective of varying fact patterns underlying those claims. *In re Janney Montgomery Scott LLC Fin. Consultant Litig.,* No. 06-3202, 2009 WL 2137224, at *4 (E.D. Pa. July 16, 2009); *see also Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001); *Serventi v. Bucks Tech. High Sch.*, 225 F.R.D. 159, 165 (E.D. Pa. 2004).

The typicality requirement is plainly satisfied here. The claims asserted by the Lead Plaintiffs are based upon the same allegedly false and misleading statements contained in, and material facts omitted from, the Company's SEC filings, press releases, and other public statements; and all assert the same legal theories. Furthermore, the acts allegedly committed by Defendants affected the entire Settlement Class in the same way — by artificially inflating the market price of MBC common stock and causing the Settlement Class members' financial losses as a result. Moreover, there are no "individual circumstances" with respect to the Lead Plaintiffs that are "markedly different" than any of the other Settlement Class members. *Johnston*, 265 F.3d at 184.

### 4.     Lead Plaintiffs Have Fairly and Adequately Protected the Interests of the Settlement Class

The final Rule 23(a) prerequisite is "adequacy." Rule 23(a)(4) requires the conclusion that "the representative parties will fairly and adequately protect the interests of the class." The adequacy requirement is met if it appears that (a) the class representatives do not have interests antagonistic to those of the class, and (b) class counsel are qualified, experienced, and generally

7

able to conduct the proposed litigation.  *See Johnston*, 265 F.3d at 185.

Here, Lead Plaintiffs' interests are clearly aligned with those of the Settlement Class, since they, like other Settlement Class members, were damaged as a result of the Defendants' alleged conduct.  Moreover, both Lead Plaintiffs and the absent Settlement Class members have precisely the same interest in proving that Defendants violated the securities laws and in achieving the maximum recovery possible for the Settlement Class.  *In re Rent-Way*, 218 F.R.D. at 115.

In addition, Co-Lead Counsel are experienced class action litigators capable of "competently, responsibly, and vigorously" prosecuting the litigation.  *In re Loewen Group Inc. Sec. Litig.*, 233 F.R.D. 154, 166 (E.D. Pa. 2005) (quoting *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir.1977)).  Co-Lead Counsel, under the supervision of Lead Plaintiffs, have worked diligently and vigorously in the pursuit of the Settlement Class's claims in order to maximize the recovery achieved for the benefit of the Settlement Class.  Among other things, Co-Lead Counsel conducted an extensive investigation of public and non-public sources of information relating to the claims and the underlying events alleged in the Complaint and reviewed and analyzed the evidence adduced during their investigation; researched the applicable law with respect to the claims alleged and the potential defense thereto; undertook extensive arms'-length settlement negotiations under the supervision of Lead Plaintiffs and mediated by a highly-respected former judicial officer; documented appropriately the agreements reached with the Defendants in a Stipulation of Settlement; accurately summarized the Settlement and its components in the Notice presented to the Court for transmittal to all potential Settlement Class Members; and, with the assistance of an outside consultant, devised a proposed plan for allocating the Settlement proceeds that will ensure that all Settlement Class Members

8

who file claims are treated fairly and reasonably.  ¶¶ 4, 19-20.

   **B.    The Requirements of Rule 23(b)(3) Have Been Met**

   In addition to meeting the prerequisites of Rule 23(a), a class action must satisfy the

requirements of at least one of the subdivisions of Rule 23(b).  In this case, the requirements of

Rule 23(b)(3) are satisfied.  That Rule provides:

> (b) A class action may be maintained if Rule 23(a) is satisfied and if: ... (3) the
> court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a
> class action is superior to other available methods for fairly and efficiently
> adjudicating the controversy. …

   **1.    The Predominance Requirement Has Been Met**

   "Predominance measures whether the class is sufficiently cohesive to warrant

certification."  *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 207 (E.D. Pa. 2008); *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  While predominance requires that common questions

outweigh individual questions, *see Johnston*, 265 F.3d at 185, the existence of individual

questions of fact does not per se preclude class certification.  *Eisenberg v. Gagnon*, 766 F.2d

770, 787 (3d Cir. 1985).  "Predominance is normally satisfied when plaintiffs have alleged a

common course of conduct on the part of the defendant."  *In re Janney Montgomery Scott*, 2009

WL 2137224, at *5 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148

F.3d 283, 314-15 (3d Cir. 1998)).  Indeed, the Supreme Court has noted that "[p]redominance is

a test readily met in certain cases alleging ... securities fraud."  *Amchem*, 521 U.S. at 625 (citing

Fed. R. Civ. P. 23 Advisory Committee Notes, 1966 Amendment, 28 U.S.C.A. Rule 23, at 385);

*In re Rent-Way*, 218 F.R.D. at 116; *In re Corel Corp. Inc. Sec. Litig.*, 206 F.R.D. 533, 543 (E.D.

Pa. 2002); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 288 (S.D.N.Y. 2003).

   Here, the predominance test is plainly met.  All claims of Lead Plaintiffs and other

Settlement Class members, and all defenses that the Defendants might have raised in response thereto, are applicable to the entire Settlement Class. Defendants' liabilities for the alleged false and misleading statements and omissions in this case would have either been established, or defeated, on a class-wide basis. As a result, Lead Plaintiffs have met the predominance requirement because common questions of law and fact are present and predominate over any individual issues that might have arisen in this Action.

### 2.    The Superiority Requirement Has Been Met

Lead Plaintiffs have also has met the superiority requirement. When considering a proposed settlement class for purposes of superiority, the court "need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem*, 521 U.S. at 710. In assessing superiority, a court "must balance the fairness and efficiency of the class action against other alternative forms of resolution, such as individual lawsuits or consolidation." *In re Rent-Way*, 218 F.R.D. at 121 (citing *In re Corel*, 206 F.R.D. at 544). Here, maintenance of the Action as a class action is superior to other methods. Individual Settlement Class members have not demonstrated to this point an interest in controlling this Action. Indeed, as of the date of this filing, no objections to the Settlement have been filed and no exclusions have been received. ¶¶ 9, 27, 36. Further, allowing this case to proceed as a class action will avoid potentially duplicative litigation, potentially inconsistent rulings, and save judicial resources. As the court stated in *In re DVI*:

> A class action is clearly the preferable means of adjudication to promote the efficient use of limited judicial resources. Absent a class action, courts could theoretically be inundated with hundreds of lawsuits presenting near-identical factual and legal issues, and many potential claimants might be precluded from pursing their claims due to the prohibitively high costs associated with securities litigation. A class action would allow both Lead Plaintiffs and Defendants to avoid duplicative expenses and take advantage of economies of scale which they would otherwise lack.

249 F.R.D. at 218; *see also In re Janney Montgomery Scott*, 2009 WL 2137224, at *6.

## IV.     THE NOTICE OF SETTLEMENT SATISFIES DUE PROCESS REQUIREMENTS AND IS REASONABLE

Rule 23(c)(2) requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974) (class notice designed to fulfill due process requirements); *Lachance v. Harrington*, 965 F. Supp. 630, 636 (E.D. Pa. 1997). Rule 23(c)(2) also requires that "the notice indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out and that any member who does not opt out may appear through counsel." *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007). "The due process requirements of the Fifth Amendment are satisfied by the 'combination of reasonable notice, the opportunity to be heard and the opportunity to withdraw from the class.'" *In re Am. Bus. Fin. Servs. Inc. Noteholders Ltig*., No. 05-232, 2008 WL 4974782, at *10 (E.D. Pa. Nov. 21, 2008) (quoting *In re Prudential*, 148 F.3d at 306). Rule 23(e) further "requires that notice of a proposed settlement must inform class members: (1) of the nature of the pending litigation; (2) of the settlement's general terms; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the Fairness Hearing." *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 328.

Here, in accordance with the Court's Preliminary Approval Order, starting on June 4, 2009, HR&S caused the Notice, as approved by the Court, to be mailed by first class mail to potential Settlement Class members. The Notice contains a thorough description of the Action, Settlement, the Plan of Allocation, and the Settlement Class Members' rights to participate in and object to the Settlement, exclude themselves from the Settlement Class, and participate in the

11

Fairness Hearing.  ¶25.  On June 17, 2009, the approved Summary Notice was published in the

national edition of *The Wall Street Journal* and released over the *PR Newswire*.  ¶25.

Information regarding the Settlement, including downloadable copies of the Notice and Proof of

Claim, was also posted on HR&S's website, *www.hrsclaimsadministration.com*.  ¶25.

The notice program, which combined an individual, mailed Notice to all potential

Settlement Class members who could be reasonably identified as well as to custodian holders,

and a Summary Notice published in the nation's pre-eminent national business publication and

over the internet, contained all information required by § 21D(a)(7) of the Private Securities

Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(7), and is adequate to meet the due

process and Rule 23(c)(2) and (e) requirements for providing notice to the Settlement Class.

## V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The Settlement provides the Settlement Class with a recovery of $4,500,000.  The Plan of

Allocation provides that the $4,500,000, less all taxes, approved costs, and Court-awarded

attorneys' fees and expenses (the "Net Settlement Fund") will be distributed to Settlement Class

members who submit a timely, valid Proof of Claim ("Authorized Claimants").  Each Authorized

Claimant will receive a *pro rata* share of the Net Settlement Fund, as calculated by the Claims

Administrator, based on the value of his, her, or its recognized claim as compared to the total

value of all recognized claims submitted by Authorized Claimants.  ¶¶ 28-32.

Lead Plaintiffs and Co-Lead Counsel respectfully submit that the proposed Settlement is

fair, reasonable and adequate in light of the circumstances, including the difficulty of proving

Defendants' scienter on claims asserted in this Action.

### A.     The Standards for Judicial Approval of a Class Action Settlement

"There is an overriding public interest in settling class action litigation, and it is to be

encouraged by the courts, particularly in complex settings that will consume substantial judicial resources and have the potential to linger for years." *In re PNC Fin. Servs. Group, Inc.*, 440 F. Supp. 2d 421, 429 (W.D. Pa. 2006); *see also In re Prudential*, 148 F.3d at 317; *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir. 1995). Settlement spares the litigants the uncertainty, delay and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.

Final approval of a settlement pursuant to Rule 23(e) turns on whether the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e) (2); *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). Absent some indicia of collusion, a class action settlement reached through arms'-length negotiations with opposing counsel is entitled to a presumption of fairness. *In re PNC*, 440 F. Supp. 2d at 431; *Cohen v. Tuttle*, No. 85-2396, 1987 WL 7224, *1 (E.D. Pa. Feb. 24, 1987) ("A compromise settlement is presumed, initially, to be fair and reasonable and should be regarded not as an unlimited victory but as a realistic compromise."). A settlement reached under the supervision of an appropriately selected lead plaintiff is entitled to an even greater presumption of fairness. As stated in the Senate Committee Report issued in support of the PSLRA, as cited in *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63-64 (D. Mass. 1996): "Institutions with large stakes in class actions have much the same interests as the plaintiff class generally; thus, courts could be more confident settlements negotiated under the supervision of institutional plaintiffs were 'fair and reasonable.'" Furthermore, in determining whether a given settlement is fair and reasonable, the opinion of experienced counsel is entitled to considerable weight. *See Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801, 804 (3d Cir. 1974).

The decision of whether to approve a proposed class action settlement "is left to the

sound discretion of the district court." *In re Prudential*, 148 F.3d at 317.  In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit directed district courts to consider the following non-exhaustive list of factors in deciding whether to approve a proposed settlement of a class action:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id*. at 157 (citations omitted); *see also In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 164-65 (3d Cir. 2006); *In re Cendant*, 264 F.3d at 231; *Eichenholtz*, 52 F.3d at 488.  As set forth below, the Settlement represents an excellent result for Class, is presumptively fair, and clearly satisfies the *Girsh* factors.

**B.      An Analysis of the *Girsh* Factors Confirms That the Settlement Is Fair, Reasonable, and Adequate**

**1.      The Complexity, Expense, and Duration of the Litigation**

Securities fraud class actions such as the current Action involve complex issues, the resolution of which often entails "a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court."  *In re Prudential*, 148 F.3d at 318 (affirming district court's final approval of settlement where "litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses, and would not be completed for years"); *see also In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, *3 (D.N.J. Nov. 28, 2007); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (securities class actions are particularly "difficult and notoriously uncertain" as to both liability damages).

In the absence of the proposed Settlement, a number of unresolved procedural issues would have had to be addressed prior to a trial on the merits.  For instance, while Defendants filed a motion to dismiss prior to the parties reaching the proposed Settlement, that motion would have to be fully briefed and decided by the Court.  Other matters, such as the certification of a class for trial, and any summary judgment motions filed by the parties would also have to be briefed and decided by the Court.  The resolution of each of these issues would require an additional investment of time and expense on behalf of each of the parties.  *See, e.g.*, *In re Janney Montgomery Scott*, 2009 WL 2137224, at *8.

The complexity of the substantive issues in this Action also weighs in favor of the Settlement.  At trial, Lead Plaintiffs would have to establish each of the elements for the claims asserted in the Complaint under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5, including scienter and damages.  The proof needed would have involved accounting and financial issues that would have required extensive and expensive consultation with forensic accounting and damage experts.

Furthermore, absent the Settlement, there would have been significant additional necessary resources and costs expended to prosecute the claims against the Defendants.  Trial on theses issues would be both lengthy and costly, and would require expert testimony, further adding to the expense and duration of the Action.  *See In re Prudential*, 148 F.3d at 318. Moreover, even assuming a favorable trial outcome, of which there were substantial risks to Lead Plaintiffs, the delay of post-trial motions and the appellate process would likely have denied the Settlement Class any recovery for years.  Thus, "[i]t is safe to say, in a case of this complexity, the end of that road might be miles and years away."  *In re Chambers Dev. Sec. Litig.*, 912 F. Supp. 822, 837 (W.D. Pa. 1995).

15

As a result, the Settlement secures a substantial recovery for the Settlement Class undiminished by further expenses and without the delays, risks and uncertainties of continued litigation.  This factor weighs in favor of approving the Settlement.

    2.   **The Reaction of the Settlement Class to the Settlement**

The reaction of the Settlement Class to the Settlement is another factor favoring its approval by the Court.  *See In re Prudential*, 148 F.3d at 318.  While the deadline for filing objections is August 28, 2009, as of the date of the present filing, Co-Lead Counsel are not aware of any objections with respect to the Settlement, and the Claims Administrator has not received any requests for exclusion from the Settlement Class, out of the more than 10,167 Notices sent to potential Settlement Class members or their nominees.  ¶¶ 9, 24, 25, 36.[5]

It is well settled that the complete absence or a small number of objections to a proposed class settlement is strong evidence that the settlement is fair and reasonable.  *See Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15 (3d Cir. 1993) (silence is "tacit consent" to settlement); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (concluding that, when "only 29 members of a class of 281 objected, the response of the class as a whole "strongly favors settlement"); *In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 530 (E.D. Pa. 1990).

Thus, Lead Plaintiffs respectfully submit that the positive reaction of the Settlement Class to date supports approval of the Settlement.

    3.   **The Stage of the Proceedings and Amount of Discovery Completed**

The third *Girsh* factor requires the court "to consider the degree to which the litigation has developed prior to settlement."  *In re Rent-Way Sec. Litig.*, 305 F. Supp.2d 491, 502 (W.D.

---

[5]  As set forth in the Notice, requests for exclusion were to be postmarked by no later than August 22, 2009 and mailed to the Claims Administrator.  If any requests for exclusions or objections are received after the date of this submission, Co-Lead Counsel will address them in a

Pa. 2003); *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir.1995) (this factor "captures the degree of case development that class counsel have accomplished prior to settlement").  "Through this lens," the Third Circuit has written, "courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating."  *In re Gen. Motors*, 55 F.3d at 813.

As set forth in the Declaration, prior to entering into the Settlement, Co-Lead Counsel had extensively investigated the relevant facts and claims alleged in the Complaint, reviewed and analyzed a multitude of public document and filings made by the Company with the SEC, conducted interviews with numerous current and former MBC employees, and consulted with their forensic accounting and damages experts to get an objective evaluation of the strengths and weaknesses of their claims and the potential defenses thereto, as well as the amount of damages suffered by the Settlement Class.  ¶¶ 19-20.  Additionally, in connection with the Settlement, Lead Plaintiffs reviewed documents related to the allegations of the Complaint produced by Defendants, which documents consisted of e-mails between MBC and employees, including certain of the Defendants, and related to: (i) the Company's accounting practices in its Energy Segment; (ii) the Company's accounting for specific projects; (iii) revenue recognition, including the Company's treatment of non-billable costs; and (iv) MBC's implementation of Oracle and the training of its employees on this system.  Co-Lead Counsel also interviewed MBC's current Vice President and Corporate Controller, James M. Kempton, who had knowledge of the Settlement Class's claims and the documents produced.  Co-Lead Counsel therefore had the requisite information to make an informed decision about the relative benefits of litigating or settling the Action and "to ensure that [the] proposed [S]ettlement is the product of informed

---

reply brief, which will be filed with the Court by September 7, 2009.

negotiations." *In re Prudential*, 148 F.3d at 319.

        **4.**      **The Risks of Establishing Liability and Damages and in Maintaining the Class Action Through Trial**

      *Girsh* also holds that, in assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial." 521 F.2d at 157. In so doing, the Court is not called on to adjudicate disputed issues or decide unsettled questions, but instead, should "balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319.

      Here, there are certain undeniable risks that had to be considered by Lead Plaintiffs in assessing the sufficiency of the Settlement. In particular, Lead Plaintiffs faced a very substantial challenge in establishing Defendants' scienter. Defendants argued that Lead Plaintiffs could not establish the requisite fraudulent intent or reckless disregard because (a) Defendants had no knowledge that MBC's financial statements were materially false either at the time they were filed with the SEC or at any time before the errors were discovered and announced, and (b) Defendants' failure to uncover the accounting errors occurred not as the result of their reckless disregard for the truth, but, at the most, because of mistakes, bad judgments, or poor management. While Lead Plaintiffs believe they would have been able to establish scienter as to each of the Defendants, they faced a real risk that a jury would find that the Defendants did not act with the requisite intent to defraud. ¶23.

      Even if Lead Plaintiffs were successful in establishing liability, they faced risks in proving damages. As an initial matter, in securities cases, calculation of damages is a complicated and uncertain process, often requiring expert opinion about the difference between

the purchase price and the "true value" of the security (*i.e.*, value absent the fraud) at the time of purchase. *See Sowell v. Butcher & Singer, Inc.*, 926 F.2d 289, 297 (3d Cir. 1991); *see also Semerenko v. Cendant Corp.*, 223 F.3d 165, 184 (3d Cir. 2000). In addition to establishing the "true value" of MBC's common stock, Lead Plaintiffs would have also had to prove that the alleged false statements or omissions caused the damages.

Because of the complex nature of damages and loss causation in a Section 10(b) action, expert testimony is almost always necessary to establish the amount — and indeed the existence — of actual damages. Defendants' experts would have presented sophisticated analyses and methodologies for calculating damages as they relate to the statements of MBC, and a wide divergence would exist between the opinions of these experts and those put forth by Lead Plaintiffs. It is difficult to predict which testimony or methodology might be accepted by the jury or which might simply be rejected as inherently speculative and unreliable. *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985) ("[I]t is virtually impossible to predict with any certainty which [experts'] testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions.").

Lead Plaintiffs realize that in the "battle of experts" it is certainly possible that a jury would side with Defendants' damage experts, thus finding no damages or only a fraction of the damages Lead Plaintiffs claimed. *See In re Computron Software*, 6 F. Supp. 2d 313, 320 (D.N.J. 1998). Further, there are several notable cases where plaintiffs won a jury verdict, only to have the jury's determination overturned on appeal. *See*, *e.g.*, *Levinson v. Prentice-Hall, Inc.*, 868 F.2d 558, 564-65 (3d Cir. 1989) (jury award of $2.3 million in punitive damages overturned); *Robbins v. Kroger Props.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of more than

$81 million on basis of loss causation); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after 11 years of litigation, a jury verdict in the plaintiffs' favor and a First Circuit decision sustaining the plaintiffs' cause of action, the verdict was reversed in an *en banc* decision).

Furthermore, while Lead Plaintiffs believe that each of the class action elements are met and that they would have been able to maintain the Action as a class action through trial, the Settlement was reached prior to Lead Plaintiffs moving for class certification.  Moreover, even if this Court had certified the class, no class certification decision is immune from a possible reversal on appeal or reconsideration at a later time, including based on issues that may develop at trial itself.  *See, e.g., Regents of the Univ. of Cal. v. Credit Suisse First Boston USA, Inc.*, 482 F.3d 372 (5th Cir. 2007), *cert. denied*, 128 S.Ct. 1120 (Jan. 22, 2008).  Indeed, a class certification order may always be altered or amended any time before a decision on the merits. Fed. R. Civ. P. 23(c)(1).  *See also In re Janney Montgomery Scott*, 2009 WL 2137224, at *10; *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 476-77 (S.D.N.Y. 1998) (decertification can occur if management problems arise during litigation and could deprive class of any recovery).

These risks to establishing liability, damages, and maintaining the class action through trial, while significant, were obviated by reaching the Settlement.  When viewed against the substantial and certain benefits that the Settlement will provide to the Settlement Class, these risks favor approval of the Settlement.

> 5.    **Defendants' Ability to Withstand a Greater Judgment, and the Reasonableness of the Settlement in Light of the Best Possible Recovery and All Attendant Risks of Litigation**

The last three *Girsh* factors are the reasonableness of the settlement in light of (i) the Defendants' ability to withstand a greater judgment, (ii) the best possible recovery, and (iii) all

the attendant risks of litigation. These factors, too, support approval of the Settlement.

The Third Circuit has observed that the court must "measure[] the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors*, 55 F. 3d at 806. In this regard, the Third Circuit has cautioned that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement … The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.

*Id.* (internal citations omitted).

Here, while it is possible that MBC could withstand a higher judgment than $4.5 million, numerous settlements have been approved where a settling defendant has the ability to pay greater amounts. In fact, the Third Circuit has noted that this fact alone does not weigh against settlement approval. *In re Warfarin*, 391 F.3d at 538. As courts have held, the range of possible recovery must be juxtaposed against the likelihood of recovery and is not reducible to a simple mathematical equation yielding a particularized sum. *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *Fickinger v. C.I. Planning Corp.*, 646 F. Supp. 622, 630 (E.D. Pa. 1986). Here, the Settlement amount represents approximately 15% of the maximum recoverable damages in this case, which Lead Plaintiffs' damages expert estimated to be approximately $29.3 million if Lead Plaintiffs prevailed on all claims at trial. ¶23. This Settlement amount certainly falls within the "range of reasonableness" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman,* 464 F.2d at 693; *see also In re Comty. Bank of N. Va. and Guar. Bank Second Mortg.*

*Litig.*, No. 02-1201, 2007 WL 2008494, at *9 (W.D. Pa. July 5, 2007) (approving settlement that was equal to 15.4% of potential damages); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, No. 03-4578, 2005 WL 1213926, at *9 (E.D. Pa. May 19, 2005) (approving settlement amounting to approximately 11.4% of total damages); *In re Aetna Inc. Sec. Litig.*, MDL No. 1219, 2001 WL 20928, at *11 (E.D. Pa. Jan. 4, 2001) (settlement provides recovery of approximately 10% of best possible recovery); *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000) (approving settlement that provided approximately 5.2% of best possible recovery common stock purchasers and approximately 8.7% for preferred stock purchasers); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (approving settlement of between 6% and 10% of damages); *In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) (approving settlement of approximately 7.5% of damages).[6]

Indeed, while the Settlement before the Court represents a significant recovery, it recognizes the risks of further litigation.  Here, the Settlement was entered into prior to the Court deciding Defendants' motion to dismiss, and anticipated motions for class certification and summary judgment.  As discussed herein, there were significant risks in establishing Defendants' liability, including most significantly whether Defendants acted with scienter.  Moreover, notwithstanding these risks, many securities cases have been lost at trial, on post-trial motions, or on appeal.  *See Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversing $87 million judgment after trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir.

---

[6]  *See also* Laura E. Simmons & Ellen M. Ryan, Securities Class Action Settlements: 2008 Review and Analysis, Cornerstone Research, *http://securities.cornerstone.com*, at 6 (the median and recovery rate of securities cases with estimated damages under $50 million is 11.7%).

1971), *rev'd*, 409 U.S. 363 (1973) (reversing $145 million judgment after years of appeals and on a theory that defendant had not raised, or argued).

Given the significant risks and complex issues involved in the litigation, and the significant attendant risks of continuing to litigate this Action, Co-Lead Counsel believe that this Settlement represents not only a "reasonable" result, but an outstanding one when viewed in light of all of the risks of litigation that will be eliminated.

## VI.    THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

Approval of a plan of allocation in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution must be fair, adequate and reasonable. *In re Cendant*, 264 F.3d at 231. In determining the fairness, reasonableness and adequacy of a proposed plan of allocation, courts give great weight to the opinion of qualified counsel. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997); *In re NASDAQ Market-Makers Antitrust Litig.*, No. 94 Civ. 3996 RWS, 2000 WL 37992, *2 (S.D.N.Y. Jan. 18, 2000) ("An allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel").

The Plan of Allocation here — contained in the Notice mailed to potential Settlement Class members — was created by Co-Lead Counsel, with the assistance of their damages expert. ¶32. To date, no objections to the Plan of Allocation have been filed or served on Co-Lead Counsel. ¶¶ 9, 27, 36. The Plan of Allocation provides that the Net Settlement Fund will be distributed to Settlement Class members who submit a timely, valid Proof of Claim Form. The Plan of Allocation is designed to achieve an equitable distribution of the Net Settlement Fund.

Specifically, the Plan of Allocation calculates the recognized loss amount based on each

Authorized Claimant's *pro rata* share of the Net Settlement Fund, without calculating whether some shares, based on the purchase, acquisition, and/or sale dates, were more damaged than others.  ¶¶ 28-32.  Thus, the Plan treats all Settlement Class members in a similar manner: every Settlement Class member who purchased and/or acquired shares of MBC common stock during the Settlement Class Period and held those shares through the end of the Settlement Class Period (and who submits a valid and timely claim and does not exclude himself, herself, or itself from the Settlement Class) receives a pro rata share of the Net Settlement Fund in the proportion that the Authorized Claimant's Recognized Claim bears to the total of all Recognized Claims.  ¶¶ 28-32.  In processing claims and determining which shares purchased and/or acquired during the Settlement Class Period were sold and at what times, purchases, acquisitions, and sales of MBC common stock will be matched on a first-in/first-out basis.

This *pro rata* method of allocating settlement proceeds has been repeatedly accepted by the Courts.  *See, e.g., In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580-81 (S.D.N.Y. 2008); *In re PainCare Holdings, Inc. Sec. Litig.*, 6:06-cv-362-Orl-28-DAB, Final Judgment Order, dated Sept. 15, 2009 (Docket No. 161).[7]  Indeed, courts have recognized that, under certain circumstances, an attempt to make precise calculations of each class member's loss could be counterproductive in allocating a settlement.  *See Women in City Gov't United v. The City of New York*, No. 75 Civ. 2868 (MJL), 1989 WL 153059, at *5 (S.D.N.Y. Dec. 13, 1989) ("[A] formula for allocating the settlement fund in proportion to the precise harm suffered by each plaintiff would entail substantial costs as well as delay in the ultimate distribution of the settlement award.").  Here, Co-Lead Counsel, in consultation with the Claims Administrator, determined that this Plan of Allocation would assure that all Authorized Claimants received a

---

[7]  Unreported orders and opinions are attached to the Declaration as Exhibit 7.

portion of the Settlement without diminishing the Settlement Fund with the considerable costs and delays associated with making unnecessary calculations in the claims administration process.

Lead Plaintiffs believe that the Plan of Allocation is the most fair and reasonable way to apportion the Settlement Fund given the different risks involved. Moreover, as noted previously, no Settlement Class member has objected to the Plan of Allocation, which further supports approval of the proposed Plan of Allocation by the Court.

## VII.    CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter an Order certifying the Settlement Class for settlement purposes, and approving the Settlement as fair, reasonable, and adequate and the Plan of Allocation as fair and reasonable.

Dated:  August 24, 2009                          Respectfully Submitted,

/s/  Mark R. Rosen
Daniel E. Bacine
Mark R. Rosen  (PA-31231)
Lisa Lamb
BARRACK RODOS & BACINE
Two Commerce Square
2001 Market Street
Suite 3300
Philadelphia, PA 19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

- and -

Michael K. Yarnoff
Benjamin J. Sweet
Bharati O. Sharma
BARROWAY TOPAZ KESSLER
   MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610) 667-7056

*Co-Lead Counsel for Lead Plaintiffs*
  *and the Proposed Settlement Class*

Stanley M. Stein
FELDSTEIN,GRINBERG, STEIN &
  MCKEE
428 Boulevard of the Allies
Pittsburgh, PA 15219
Telephone: (412) 263-6125

*Liaison Counsel for Lead Plaintiffs*
  *and the Proposed Settlement Class*

26